# Lawrence *et al.* *versus* Luhr *et al.*

1. B. being the owner of warrant 4886, at the request of P., a surveyor, employed him to locate it, by mistake P. located it on 4883 adjoining, and laid out farm lots and roads. P. afterwards, in ignorance of his mistake, bought 4883. B. sold farms on the location, which were settled and improved. P. sold 4883, his vendees knowing of the improvements and seeing others made, but not knowing that they were on 4883. *Held*, that the vendees were not estopped to claim 4883.

2. Silence will estop only where it is a fraud; it is different as to positive acts.

3. Millingar *v.* Sorg, 5 P. F. Smith 215, s. c. 11 Id. 471, compared and distinguished.

March 31st 1870. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Elk county:* No. 325, to January Term 1870.

This was an ejectment, brought July 16th 1867, by John J. Lawrence, A. J. Cassatt and Alfred L. Tyler, against Charles Luhr, M. Benzinger, John Eschbach and others, for 511 acres of land, being the eastern half of a tract, No. 4883, warranted in the name of Wilhelm Willink and others. Benzinger and Eschbach were not summoned; the other defendants were.

This warrant is bounded on the north by No. 4882, and on the south by No. 4886, on the east by the district line.

The controversy arose by reason of the location of 4886—by Hiram Payne, a surveyor—on 4883, and the question was whether under the circumstances in the case the plaintiffs were estopped

from claiming the land in dispute. The location was made in 1845.

On the 24th of September 1846, Payne became the owner of the tract in dispute in the different portions and at the dates following:—September 24th 1846, 209 acres; January 3d 1848, 143 acres; September 1st 1848, 159 acres. On the 17th of June 1852, he conveyed the undivided half of the 511 acres to Newell Matson, and on the 17th of April 1853, he conveyed the other half to Matson. On the 18th of July 1865, Matson conveyed nineteen-twentieths of the tract to Lawrence and Cassatt; and on the 8th of January 1866, he conveyed the remaining twentieth to Tyler.

On the trial, August 6th 1869, before Johnson, P. J., the plaintiffs gave their title in evidence as above, and rested.

The defendants then proved that on the 22d of February 1845, Benzinger and Eschbach, then and since residing in Baltimore, purchased No. 4886 and others of the Willink warrants from Thomas P. Stryker.

They read the deposition of Benzinger, who testified that when he purchased the warrant he was ignorant of the location of the land, except that it adjoined land on the east, which he had purchased of the United States Land Company; in May or June 1845, he was in St. Mary's, Elk county; Payne called on him, and said he had been agent for the Stryker lands, was a surveyor, and desired to do witness's surveying; witness showed Payne a map of the Land Company's tracts; Payne said he could locate the Stryker lands, he had papers and a sketch of them; Payne commenced work in June, and three or four days afterwards came to St. Mary's, and said to witness that he had found "the maple corner," and would have no difficulty in locating the lands. Witness always acted on the location of Payne; roads were laid out on 4886 with the others; they were subdivided into farm lots and sold according to Payne's location. In September 1846 the witness and Eschbach went with Payne to the maple corner, and whilst standing on high ground Payne said, "this is the bugbear in the way of the Sunbury and Erie Railroad; he had bought lands in that vicinity, which he thought we ought to have;" they were located on the north of those he had located for us; 4883 was one of the numbers. Witness said they had land enough. Witness on cross-examination testified, that they never owned or pretended to own 4883; Payne used his own papers and maps. Eschbach's deposition was read: he testified that he relied entirely on Payne's ability to survey and locate; Payne professed to be fully acquainted with the corners, courses, &c.; in subdividing the tract and selling farms they acted on the location made by Payne.

Ignatius Garner, one of the defendants, testified: Payne

[Lawrence *v.* Luhr.]

claimed the land north of the defendants; he said it was the eastern half of 4882; in 1846, 1847 or 1848, he wanted to sell his land to Benzinger and Eschbach. Witness was with Payne and Eschbach at that time; there were settlers then on the lands; the improvements were commencing, not many made. The defendant gave evidence of the purchase by them and their predecessors, after Payne's survey and purchase of parcels of the land in dispute as of No. 4886; the first of the deeds being in 1849, and extending to 1860; and that they settled on them and improved them; that these parcels were within the location of Payne, but were in fact on 4883; that they were shown by Payne to Garner, the agent of Benzinger and Eschbach, with the subdivisions and roads as laid out by him.

The deposition of Payne was read by the defendants; he said: he first called the attention of Benzinger to the Stryker lands, including 4886, and sent him a rough draft. After the purchase by Benzinger witness surveyed for him, commencing June 27th 1845; at the time of his survey no part of 4886 or 4883 was improved; the county was an unbroken wilderness. Witness testified that in his opinion "then and now," his location of 4886 was correct; at the date of his sale of the land in dispute, there were no subdivision lines or improvements on it; witness had no hand in making the final contract with Benzinger; the sale was made to him through agencies employed by witness; he claimed commissions from Stryker for effecting the sale. On cross-examination he testified that he gave no encouragement to Benzinger and Eschbach to purchase the land; he did not know what land the defendants occupied; Payne resided in Waverley, New York; Matson at one time in Owego, New York, and afterwards and up to the time of trial in Chicago.

Judge Johnson, after stating the paper titles of the parties respectively and the facts in evidence, charged:—

* * * " There is no evidence that the present plaintiffs had any knowledge either of the correct location of the land they purchased, or of the mistake that Payne had committed in locating the Benzinger and Eschbach tract 4886, or of the delusion under which they and their vendees had labored. Nor that Matson had any such knowledge when he bought, or afterwards while he owned from 1853 to 1865, or actual knowledge of its location.

" But the defendants, or most of them, were in the actual occupancy of their respective lots when Matson purchased, and of course when the present plaintiffs bought in 1865, and possession was notice to all persons of whatever title the parties in possession had, and of the claim under which they occupied, whether legal or equitable.

" The duty of a purchaser of land is to go to the party in possession and inquire of him by what title or right he thus

occupies there. This was necessary to enable the plaintiffs to protect themselves as innocent purchasers against a secret equity. Not having taken this precaution, they must be held to have purchased at the risk of a presumed knowledge of all the equities to which the defendants were entitled as against Payne.

" [What are those equities? Were it not for the recent ruling of the Supreme Court in the case of Millingar v. Sorg, that went from this county, I should have answered—nothing. In that case the rule of estoppel is carried further, or rather applied to a different class of cases from those in which it was formerly considered applicable. This case requires a still further extension of the rule, but which we think is required by the same considerations of equity and supported by the same reasons.] Were Benzinger & Eschbach, the defendants in this case, without improvements made, they would be entitled to no equities either against Payne or his vendees.

" They bought before Payne had anything to do with, or say to them. Had Payne been a stranger to the land, and been employed merely as a surveyor to locate and subdivide this with other tracts, the rule of estoppel would not apply. In that case Payne would have sustained no confidential relation to them. But the evidence shows, if you believe it, that Payne sought the position of surveyor, on the ground of older and superior knowledge of the lands and their location, and his consequent superior qualification to locate them aright. In that way he gained their confidence, secured the employment, and lulled their vigilance to repose. Otherwise their own attention to the question of location, or the skill of some other surveyor, would probably have avoided the fatal mistake made in the location. Because of that confidence they and those to whom they sold were induced to occupy the wrong land. Still the duty of vigilance on the part of Benzinger & Eschbach, and the fact that they were not induced to expend money or labor on the land by their misplaced confidence, would not estop Payne or his grantees from claiming the land by a title subsequently acquired in the absence of actual fraud. Had Payne been aware when he acquired the title to 4883, that it covered the land he had surveyed for Benzinger & Eschbach, it would have been a fraud in him to purchase to defeat their possession. But there is no reason to suppose that he knew it. But as to the settlers who had bought and improved on the strength of his location, and were permitted to expend years of labor thereon, with the knowledge of Payne and his vendees, the case is different. They were innocent of any negligence in regard to the location of their respective lots. They took them as laid out and marked on the ground, expended their money and labor in the purchase and improvement thereof. Their possession and occupancy was notice to Payne, and all subsequent owners under

[Lawrence *v.* Luhr.]

his title, that they were claiming adversely to the Payne title. It then became the duty of Payne and his grantees to inquire what their title was. Then if it turned out that they were under a delusion created by Payne, they should have been undeceived.

" The misfortune was, they all labored under the same mistake. Who then is to suffer ? The natural answer is, he whose negligence has caused the difficulty. But that does not clearly designate the parties. They were all negligent in not ascertaining with certainty where their land was. [So far as actual settlements were made by purchasers from Benzinger & Eschbach, labor and money expended by them, and valuable improvements made, we think equity will protect them from the intrusion of the plaintiffs, whose duty it was to have advised the settlers of their mistake, and forewarned them not to improve and spend their money.]

"As to that portion of the land still owned by Benzinger & Eschbach, the parties being *in pari delicto*, we think the rule would be different. But as they have not been served with the writ in this case, and no appearance entered for them, their rights in the premises are not involved in this trial." * * *

The verdict was for the defendants. The plaintiff took out a writ of error, and assigned for error the parts of the charge enclosed in brackets.

*H. Souther* and *R. Brown*, for plaintiffs in error.

*J. G. Hall*, for defendant in error, referred to Millingar *v.* Sorg, 5 P. F. Smith 215; s. c. 11 Id. 471.

The opinion of the court was delivered, May 5th 1870, by

Agnew, J.—This is a hard case, and the learned judge below probably thought so, when he admitted that it required an extension of the rule in Millingar *v.* Sorg, 5 P. F. Smith 215, upon which he professed to found his decision. But hard cases make bad precedents. There is a striking difference between that case and this in several respects. In that case when Hiram Payne induced Messrs. Benzinger and Eschbach to purchase No. 4884, and located it on No. 4881, he was himself the owner of 4881. Here he did not induce them to buy 4886, and was not the owner of 4883 when he located 4886 upon it. There he had a title to be estopped, and did positive acts to induce others to purchase his own land. Here he simply made a mistake as a hired surveyor in the location of a tract owned by one party, upon that owned by another; and the simple question is whether such a mistake made in a survey of wild land stamps a trust upon the title to No. 4883 when afterwards acquired by him, inhering in it, and following the land into the hands of innocent purchasers. It is a conceded fact that

when Payne located No. 4886 on 4883 in the year 1845 he was ignorant of his mistake, and continued ignorant of it when he bought 4883, and when he sold that tract to Newell Matson. All the parties were wholly ignorant of the true state of the case. The learned judge, relying on the rule in equity that he should suffer whose negligence has caused the injury, held that the purchasers of 4886 from Benzinger and Eschbach having expended money and labor and made valuable improvements, would be pro tected in equity from the intrusion of the plaintiffs, whose duty it was (he said) to have advised them of their mistake and forewarned them not to improve and spend their money. But the question arises how could they advise of a mistake of which they themselves were ignorant. Silence will postpone only where silence is a fraud: Hill v. Epley, 7 Casey 334. Positive acts it is true stand on a different ground: Beauplaud v. McKeen, 4 Casey 131. But neither Matson nor the plaintiffs, so far as it appears in evidence, did anything to deceive or mislead the purchasers from Benzinger & Eschbach. The whole case therefore turns upon the question how far the mistake of Payne in surveying 4883 as 4886, when he had no title in 4883, and before the purchase of the settlers under Benzinger & Eschbach, clings to the title of 4883 after he had bought it, and followed it into the hands of innocent purchasers from him. They bought in ignorance of his mistake, and unless his previous personal act inheres in the title and follows the land, the plaintiffs cannot be implicated in an estoppel. Newell Matson, the vendee of Payne of the east half of No. 4883, was a resident of the state of New York, and afterwards removed to Chicago, Illinois. He did nothing to mislead the settlers on the land, by acts tending to perpetuate the mistake of Payne, as was done by Morris the vendee of Payne of 4881 in the case of Millingar v. Sorg. There Morris went on the ground before he purchased, saw the settlers' improvements on 4881, and passing through that tract went upon 4880 which he purchased as 4881. He continued for years to regard 4880 as his own tract 4881, laying no claim to the latter; which the settlers were holding and improving as 4884. His silence, connected with these acts of recognition, was of a kind tending to perpetuate Payne's mistake in locating 4884 on 4881, and locating 4881 on 4880. Though negative in their character, these acts were operative in their effect in lulling the settlers on 4881 into security. Here, however, no such "operative quietude," as it was termed in Millingar v. Sorg, existed to mislead the purchasers of 4886 to suppose that the owners of 4883 recognised their title to the land on which they were located. The case is simply one of mistake for which the plaintiffs are not responsible. The case is no doubt a very hard one, but it would carry the doctrine

15 P. F. Smith—16

[Lawrence *v.* Luhr.]

of estoppel beyond its just equitable limits to hold that it applies here.

Judgment reversed, and a *venire facias de novo* awarded.